UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| EQUITY PARTNERS HG, LLC and HERITAGE GLOBAL PARTNERS, INC., <br><br>Plaintiffs,<br><br>vs.<br><br>SAMSON, INC.; BLACK EARTH, LLC; and KENNETH PRICE,<br><br>Defendants. | CIV. 18-5006-JLV<br><br><br>AMENDED ORDER |

**INTRODUCTION**

In January of 2018, plaintiffs brought this diversity action alleging breach of contract, unjust enrichment and tortious interference with a contract. (Docket 1). Now pending before the court is plaintiffs' motion for service costs and attorney's fees. (Docket 27). Plaintiffs assert defendants refused to waive service without good cause. Defendants respond that defendants improperly sent the request to waive service and that plaintiffs unnecessarily incurred service expenses without giving defendants the opportunity to waive service. (Docket 29). Defendants also contest the amount of attorney's fees plaintiffs seek. (Docket 32). For the reasons given below, the court finds defendants must pay service costs and attorney's fees to plaintiffs but disagrees with plaintiffs' calculation of those costs.

**I. Facts**

Plaintiffs communicated with defense counsel Nathan Chicoine prior to filing the complaint. (Docket 27-1 at pp. 2-4). On January 29, 2018, plaintiffs' counsel asked Mr. Chicoine via e-mail if he would waive service on behalf of defendants. Id. at p. 2. Plaintiffs' counsel followed up on this request on January 31 and March 2. Id. at pp. 1-2. On March 6, Mr. Chicoine informed plaintiffs he was not representing defendants. Id. at p. 1. Plaintiffs then attempted to personally serve defendants and were unsuccessful. See Docket 7 at pp. 1-2 (describing service attempts).

On May 30, plaintiffs' counsel contacted defendant Kenneth Price—who is also the registered agent for defendants Samson, Inc. and Black Earth Inc.—by e-mail with a waiver request. (Docket 27-5). Plaintiffs also sent the waiver request to defendant Price's home by FedEx. Id. In June, plaintiffs hired law enforcement local to defendant Price to complete service, which was also unsuccessful. (Docket 27-6). Defendants never returned the service waivers. Defendant Price asserts he was away from his home in March, April and May of 2018. (Docket 28 at ¶¶ 6-8). He does not assert he was away from home in June, but states he does not recall receiving any FedEx package and never refused service. Id. at ¶¶ 9-10. Defendant Price further states he does not monitor the e-mail address plaintiffs used to contact him. Id. at ¶ 11.

On June 27, the court authorized plaintiffs to complete service by publication. (Docket 13). Plaintiffs published notice in the Rapid City Journal and the Black Hills Pioneer. (Dockets 17-19). The publication ended on

August 15. On September 6, defendants answered the complaint through Mr. Chicoine. (Docket 21). Defendant Price now states he was unaware of this action until notice was published in the Journal and the Pioneer. (Docket 28 at ¶ 13). He further states he hired counsel in August. Id. at ¶ 14.

## II. Legal Standards

Federal Rule of Civil Procedure 4(d)(2) states:

> If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant: the expenses later incurred in making service; and the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

Fed. R. Civ. P. 4(d)(2)(A)-(B). Defendants "ha[ve] a duty to avoid unnecessary expenses of serving the summons." Fed. R. Civ. P. 4(d)(1).

Where, as here, the applicable fee-shifting provision does not explain how to calculate attorney's fees, the court uses the lodestar method. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 550-51 (2010).

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

"A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir. 2001) (citation omitted). "In a case where the plaintiff

3

does not use local counsel, the court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case." Id. (citation omitted). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005).

## III. Analysis

### A. Lack of waiver

The court first finds defendants did not show good cause for their failure to waive service. It is undisputed that defendants did not waive service. The question is whether there was good cause for that failure. If not, defendants are liable for plaintiffs' service costs and the attorney's fees associated with this motion. Fed. R. Civ. P. 4(d)(2).

In an attempt to establish good cause, defendants argue plaintiffs did not send the request for a waiver by "reliable means." (Docket 29 at p. 3) (citing Fed. R. Civ. P. 4(d)(1)(G)) ("The . . . [waiver] request must be sent by first-class mail or other reliable means."). Defendants note plaintiffs sent their waiver request to defendant Price's "old email" and argue plaintiffs "knew Defendant Samson, Inc. had sold assets of the company and Mr. Price had not been in

communication with him by email for many months."[1]  Id.  Defendants also argue FedEx is unreliable because packages may be lost or stolen.  Id.

These arguments are unavailing.  The advisory committee that drafted this portion of Rule 4 stated "private messenger services or electronic communications . . . may be equally reliable" as first-class mail.  1993 Advisory Committee Notes to Rule 4.  "In the decades since the 1993 Advisory Committee Notes were drafted, other forms of electronic communication—such as email—have become more prevalent and have been used effectively to send waiver requests under Rule 4(d)."  4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1092.1 (4th ed.).  There is simply no indication that e-mail or FedEx are unreliable methods of transmitting a waiver request.  The court finds it highly unlikely that both methods of communication would simultaneously fail.

Defendants would show good cause for failing to waive service if they showed they did not receive the waiver request.  Id. ("The most obvious illustration of good cause would be never having received the notice and request for waiver and the complaint."); see also 1993 Advisory Committee Notes to Rule 4 ("Sufficient cause not to shift the cost of service would exist . . .

---

[1]Defendants appear to argue plaintiffs knew defendant Price was not checking his e-mail, but do not support that argument.  Defendants do not explain why plaintiffs knowing defendant Samson, Inc. sold company assets shows knowledge that defendant Price was no longer checking e-mail.  In addition, defendant Price is the "CEO and Vice President of defendant Samson, Inc." (Docket 28 at ¶ 2).  How defendant Price could not be in communication with defendant Samson, Inc. is perplexing, since they appear to be the same entity.

5

if the defendant did not receive the request."). However, defendants never state they did not receive the waiver request. In his affidavit, defendant Price carefully avoids stating he did not receive the request. He states he was on vacation, that he does not recall receiving a FedEx package and that he does not monitor his email. (Docket 28). The court cannot conclude from these facts defendants did not receive a waiver request.

In addition, the court finds it improbable that defendants first learned of this suit through notice published in local newspapers. At the very least, it seems more likely that Mr. Chicoine notified defendants of the impending suit. In any event, it is sufficient for the court to conclude defendants failed to show plaintiffs' methods of sending the waiver request were unreliable or that they did not receive the request.

**B.    Costs**

Having concluded defendants failed to waive service and did not show good cause for the failure, the court "must impose on the defendant[s] the expenses later incurred in making service and the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." Fed. R. Civ. P. 4(d)(2)(A)-(B). The parties dispute those costs. Defendants argue they cannot be liable for service costs plaintiffs incurred before they had "a reasonable time to return the waiver." (Docket 29 at p. 3). They assert they cannot be liable for costs incurred before June 24, 2018—30 days after plaintiffs sent the waiver request via FedEx and e-mail on May 25. Id. at p. 4. Defendants also argue plaintiffs' attorney's fees request is

6

unreasonable under the lodestar method. (Docket 32). The court agrees with both these arguments.

Rule 4(d) only requires the court to impose service costs incurred after defendants failed to waive.

> Some plaintiffs may send a notice and request for waiver and, without waiting for return of the waiver, also proceed with efforts to effect formal service on the defendant. To discourage this practice, the cost-shifting provisions . . . are limited to costs of effecting service incurred after the time expires for the defendant to return the waiver.

1993 Advisory Committee Notes to Rule 4. This is exactly the situation in the present case, where plaintiffs request service costs incurred before the expiration of the time allotted to defendants to return the waiver. Plaintiffs' waiver request was dated May 25 and allowed 30 days for defendants to return the waiver, in accordance with Federal Rule of Civil Procedure 4(d)(1)(F). (Docket 27-5). Therefore, only service costs incurred after June 24, when the waiver request expired, can be imposed on defendants.

Plaintiffs incurred $677.55 in service costs after June 24. See Docket 27 at p. 4 (listing service costs by date). The court must order defendants to pay those costs.

Plaintiffs also request $2,420 in attorney's fees associated with the motion for service costs. (Docket 31). Plaintiffs state two attorneys, Greg Hearing and Zachary Weiss, worked on the motion. Id. Mr. Hearing, an associate attorney, worked on this motion for 5.6 hours at a rate of $300 per hour, billing $1,680 in total. Id. at ¶ 5. Mr. Weiss, a law clerk, researched the legal standards for a Rule 4 motion for four hours. Id. at ¶ 6. Mr. Weiss' billing rate is $185 per hour, for a total bill of $740.

Defendants assert the amount of time Mr. Hearing and Mr. Weiss spent on this matter was duplicative and unnecessary. (Docket 32 at pp. 3-4). They also assert Mr. Hearing's and Mr. Weiss' hourly rates are unreasonably high by South Dakota standards. Id. at p. 3.

The court notes plaintiffs did not support Mr. Hearing's claimed hours with client invoices. While plaintiffs' affidavit asserts Mr. Hearing worked 5.6 hours on the motion, the attached invoices only show 3.6 hours worked. (Docket 31 at pp. 2, 7). The court accordingly will only calculate the attorney's fees for Mr. Hearing for 3.6 hours. Otherwise, the court does not find a total of 7.6 hours spent preparing the briefing for this motion is excessive or duplicative.

The court finds Mr. Hearing's and Mr. Weiss' hourly rates are excessive in the South Dakota legal community. Plaintiffs did not show they were unable to find competent local counsel to litigate this matter, so the court need not evaluate Mr. Hearing's and Mr. Weiss' billing rate by the standards of their home market in Colorado. See Hunt, 272 F.3d at 1048. As noted by Magistrate Judge Veronica Duffy, "[e]xperienced, partner-level trial counsel in [western South Dakota] have received awards of attorneys fees ranging from $200.00 per hour to $225.00 per hour in lawsuits requiring highly specialized knowledge." Anspach v. United of Omaha Life Ins. Co., Civ. No. 10-5080, 2011 WL 4832563, at *1 (D.S.D. Oct. 12, 2011). Three hundred dollars per hour for an associate and $185 per hour for a law clerk is unreasonably high for legal costs in western South Dakota.

Mr. Hearing is a 2012 law school graduate who practices commercial litigation. (Docket 31 at ¶ 4). Mr. Weiss is a 2018 law school graduate. Id. at

¶ 6. The matters presented in this motion are neither excessively fact-intensive nor legally complex. The court concludes a rate of $150 per hour for Mr. Hearing and $100 per hour for Mr. Weiss is in line with fees charged by attorneys with equivalent levels of skill and experience for a relatively simple dispute. See Black Hills Molding, Inc. v. Brandom Holdings, LLC, CIV. No. 12-5051, 2014 WL 112361 at *5 (D.S.D. Jan. 10, 2014) (approving hourly rate of $150 for associate attorney).

At a rate of $150 per hour multiplied by 3.6 hours worked on this motion, Mr. Hearing is entitled to $540 in attorney's fees. At a rate of $100 per hour multiplied by 4 hours worked on this case, Mr. Weiss is entitled to $400 in attorney's fees. The court must order defendants to pay these costs.

## ORDER

For the reasons given above, it is

ORDERED that plaintiffs' motion for attorney's fees and service costs (Docket 27) is granted in part and denied in part.

IT IS FURTHER ORDERED that defendants must pay to plaintiffs $677.55 in service costs and $940 in attorney's fees. Defendants must pay these amounts to plaintiffs within 21 days of the date of this order.

Dated September 30, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE