UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| EQUITY PARTNERS HG, LLC and HERITAGE GLOBAL PARTNERS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> SAMSON, INC.; BLACK EARTH, LLC; and KENNETH PRICE, <br><br> Defendants. | CIV. 18-5006-JLV <br><br> ORDER |

## INTRODUCTION

Plaintiffs Equity Partners HG, LLC and Heritage Global Partners, Inc.,
brought this diversity action against defendants Samson, Inc., Black Earth, LLC
and Kenneth Price ("defendant Price") centered on a contract between plaintiffs,
Samson and Black Earth.[1]  (Docket 1).   Plaintiffs allege Samson and Black
Earth breached the contract and were thereby unjustly enriched.   Id.   Plaintiffs
further allege defendant Price tortiously interfered with the contract.   Id.
Samson counterclaims, alleging plaintiffs breached the contract first.   (Docket
21).   Plaintiffs moved for summary judgment on all counts, including Samson's
counterclaim.   (Docket 33).   Defendant Price moved for summary judgment on
the tortious interference claim.   (Docket 36).

---

[1]The court refers to Kenneth Price as defendant Price to distinguish him
from his son, Stanley Price, who also played a part in these events.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and the court's standing order of October 16, 2014, the court referred the motions to Magistrate Judge Veronica L. Duffy for a report and recommendation ("R&R"). (Docket 49). The magistrate judge concluded plaintiffs were entitled to summary judgment on their breach of contract claim against Samson as well as on Samson's counterclaim. (Docket 50 at pp. 15-19). She further found defendant Price was entitled to summary judgment on the tortious interference claim. Id. at pp. 30-34. Finally, she recommended denying summary judgment on plaintiffs' breach of contract claim against Black Earth and their unjust enrichment claim against Black Earth and Samson. Id. at pp. 14, 19. Defendants timely objected to the R&R. (Docket 51). For the reasons given below, the court sustains defendants' objections in part and overrules them in part. The R&R is adopted as modified by this order.

## I. Defendants' Objections

Defendants raise three factual and three legal objections to the R&R. (Docket 51). Plaintiffs did not object to the R&R but did respond to defendants' objections. (Docket 52). As summarized by the court, defendants' factual objections assert:

1.  Plaintiffs knew defendant Price had negotiated with OnCourse Capital, LLC ("OnCourse"), to purchase Samson before he entered into the exclusive marketing and sale agreement with plaintiffs. (Docket 51 at p. 2).

2.  Plaintiffs canceled the auction of Samson's goods before defendant Price sold the goods to OnCourse. Id. at pp. 2-4.

3. Defendant Price only personally received $400,000 of Samson's sale price.   Id. at p. 4.   The sale price of $540,000 was secured by a note.   Id.

Defendants' legal objections argue:

1. OnCourse's purchase of Samson's assets was not an "entirety sale" for the purposes of the contract between plaintiffs and Samson.   Id. at p. 5.

2. Plaintiffs were not entitled to an entirety sale commission fee. Id. at p. 6.

3. Defendants did not agree to modify the contract to permit an entirety sale during Phase II of the exclusivity period.   Id. at pp. 6-7.

The court sustains defendants' third factual and legal objections, but overrules the remainder.

## II.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).   Only disputes over facts which might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at 248.   "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

3

judgment; the requirement is that there be no *genuine* issue of *material* fact."
Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## III.   Analysis

### A.   Factual objections

The magistrate judge made factual findings the court will not recite here. (Docket 50 at pp. 1-11). Defendants challenge three specific factual findings.

4

(Docket 51 at pp. 1-5). The court sustains defendants' third factual objection but finds the contested fact does not impact the summary judgment motions. The court overrules the first and second factual objections.[2]

Defendants assert their factual objections preclude granting summary judgment to plaintiffs. (Docket 51 at pp. 4-5). Because it overrules defendants' relevant objections, the court adopts the R&R's recommendation that summary judgment be granted in part to plaintiffs.

### 1. First objection

Defendants' first objection takes issue with the magistrate judge's finding that defendant Price began negotiating with Richard Whipp, representing OnCourse, "prior to November 4, 2017," for the sale of Samson, without plaintiffs' knowledge. (Docket 51 at p. 2). Defendants assert defendant Price began negotiations on April 13, 2016, and that plaintiffs "were aware of prior negotiations." Id. The record supports neither assertion.

Defendant Price, on behalf of Samson, admitted in response to an interrogatory that his April 13 communication with OnCourse was "not regarding" the sale of Samson. (Docket 34-4 at p. 2). He also stated that "[l]awyers" communicated about the sale on or about November 7, 2017. Id. Defendants further admit Samson "renewed communications with OnCourse" on

---

[2]Defendants object to the magistrate judge's consideration of facts that were not presented in plaintiffs' statement of undisputed material facts. (Docket 51 at p. 3). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The magistrate judge was free to consider all evidence in the record, as is this court.

or about November 3, 2017. (Docket 41 at ¶ 25). The record also contains an e-mail from Mr. Whipp to defendant Price, dated November 4, 2017, with a draft contract for the sale of Samson. The record evidence cannot support a finding that defendants and OnCourse negotiated regarding the sale of Samson in April of 2016. The court finds negotiations took place in early November 2017.

Furthermore, there is no evidence in the record to support a conclusion defendants and OnCourse negotiated the sale before the exclusive sale agreement took effect. Defendants point to defendant Price's deposition testimony in which he stated he "told them that we had some potential buyers already . . . there were some other companies that we exchanged emails with."[3] (Docket 34-2 at p. 9). This statement—which does not specifically identify OnCourse as a potential buyer—does not specify when defendant Price communicated with the potential buyers.

There is also no evidence to support defendants' assertions that plaintiffs knew about defendant Price's prior negotiations with OnCourse. Defendants again cite to defendant Price's deposition testimony quoted above. Defendant Price did not testify he specifically told plaintiffs he had negotiated with OnCourse to purchase Samson, at least according to the portions of his deposition filed with the court. (Docket 34-2 at p. 9). Defendant Price's statement was nonspecific and plural, referring to multiple "potential buyers"

---

[3]The preceding page of deposition testimony makes clear "them" refers to plaintiffs. (Docket 51-1 at p. 2).

and "other companies," which leaves the court little basis to conclude he told plaintiffs about OnCourse's interest in purchasing Samson.   Id.

Defendants' first factual objection is overruled.

## 2.    Second objection

The magistrate judge found defendant Price agreed to sell Samson to OnCourse before plaintiffs canceled the auction of Samson's goods.   (Docket 50 at pp. 6-11).   She relied on this finding as a partial basis for granting summary judgment to plaintiffs on their breach of contract claim against Samson.   Id. at pp. 15-19.   Defendants object, contesting an affidavit submitted by plaintiffs' auctioneer, Phil Robinson, attesting that Stanley Price told him to cancel the auction because Samson had been sold.   (Docket 51 at pp. 2-4) (citing Docket 34-10).   They instead ask the court to rely on defendant Price's deposition testimony, his responses to interrogatories, and e-mails to conclude plaintiffs canceled the auction on November 6, one day before he signed the Samson sale contract.   Id.   The record does not support defendants' objection.

The most obvious problem with defendants' objection is the lack of testimony from Stanley Price.   The auctioneer testified in an affidavit that Stanley Price informed him—"in advance of the auction"—that Samson was in sale negotiations.   (Docket 34-10 at p. 1).   He further testified that Stanley Price canceled the auction on November 7, after Samson was sold.   Id. at p. 2. Testimony from Stanley Price, the only other person, so far as the court is aware,

7

who participated in the conversation with the auctioneer, would seem necessary to support defendants' objection.

But in response, defendants provide only statements from defendant Price. On November 8, 2017, defendant Price wrote in an e-mail to an Equity Partners employee he "thought the auction was supposed to be held" and asserted there could have been equipment to sell at the auction.[4]   (Docket 34-14 at p. 2).   In response to an interrogatory and in deposition testimony, defendant Price claimed plaintiffs canceled the auction on November 6.   (Dockets 34-2 at p. 7, 34-4 at p. 3 & 51-1 at p. 2).   Defendant Price alleged one of plaintiffs' employees told Stanley Price they were cancelling the auction on November 6.   (Docket 51-1 at p. 2).   The portion of defendant Price's deposition on file with the court shows his inability to identify the employee.   Id.   In his interrogatory response, defendant Price alleged he had "assets . . . available for auction" and that he and Stanley Price "stat[ed] that [they] wanted the auction to go forward."   (Docket 34-4 at p. 3).

This record is insufficient for the court to conclude a genuine dispute exists as to the timing of the auction cancellation.   Plaintiffs produced an affidavit of the auctioneer and e-mails from the auctioneer team showing the auction was canceled on November 7 at the request of Stanley Price.   (Dockets

---

[4]Defendant Price's statement is contradicted by the contract between Samson and OnCourse, signed on November 7, in which Samson agreed to sell "all assets used in the Business, including machinery, equipment, inventory and Intellectual Property[.]"   (Docket 34-12 at p. 1).   Defendants do not explain what equipment could have been sold at the auction.

34-10 & 34-15).    Defendants produced only hearsay testimony from defendant Price as to the statements of his son.[5]   "[I]nadmissible hearsay . . . may not be used to defeat summary judgment."   <u>Brewington v. Keener</u>, 902 F.3d 796, 802 (8th Cir. 2018) (internal citation omitted).   Even viewing the facts in the light most favorable to defendants, "[t]he evidence does not present a sufficient dispute to require submission to a jury" without testimony from Stanley Price. <u>Smith</u>, 926 F.3d at 485 (internal citation omitted).

Defendants' second factual objection is overruled.

### 3.    Third objection

Defendants' third objection concerns the magistrate judge's statement that defendant Price personally received and kept the $1 million proceeds of the Samson sale.   (Docket 51 at p. 4).   They assert defendant Price only received $400,000 of the sale price and the remaining $540,000 was secured by a note. <u>Id.</u>   Plaintiffs defend the magistrate judge's statement by pointing to the Samson sale contract and defendant Price's deposition testimony.   (Docket 52 at p. 4). The court sustains the objection.

The Samson sale contract provided that OnCourse would pay $1 million to Samson for the sale of its assets.   (Docket 34-12 at p. 1).   Defendant Price testified in his deposition he received $400,000 of the sale price personally in cash.   (Docket 34-2 at p. 7).   He also agreed the remaining amount—

---

[5]Defendants do not explain how defendant Price's statements, which are clearly hearsay, could be admissible at trial.   <u>See</u> <u>Smith v. Kilgore</u>, 926 F.3d 479, 485 (8th Cir. 2019) (party offering evidence against summary judgment "must demonstrate that the evidence may be offered at trial in an admissible form.").

$600,000—was initially secured by a seven-year note.  Id.  Defendant Price also testified, however, that the $600,000 loan was reduced by $60,000 to a total of $540,000 and the length of repayment was extended to eight years.  Id.  Although the portion of the deposition on file with the court indicates plaintiffs' counsel asked defendant Price why the loan was reduced, his response is not in the record.  Id.

Defendant Price's testimony shows he did not receive the full $1 million sale proceeds, as the magistrate judge found.  (Docket 50 at p. 11).  Plaintiffs did not produce any facts contesting defendant Price's testimony.  The court sustains defendants' third factual objection and modifies the R&R consistent with this ruling.  However, as discussed below, the amount of the Samson sale proceeds defendant Price personally received has no bearing on the damages plaintiffs are entitled to as a result of Samson's breach of contract.  See infra Section III.C.

### 4.    Breach of contract

The magistrate judge recommended granting summary judgment to plaintiffs on their breach of contract claim because Samson breached the contract first, excusing plaintiffs' decision to cancel the auction.[6]  (Docket 50 at

---

[6]The magistrate judge also concluded summary judgment was appropriate because plaintiffs were entitled to rely on Stanley Price's statements before the auction that Samson had been sold because, as Samson's president and the son of its CEO, he was an agent of Samson speaking within the scope of his authority.  (Docket 50 at pp. 18-19).  Defendants do not challenge this alternative ruling and the court adopts it in full.

pp. 15-19).   Defendants only object to this recommendation on factual grounds, arguing there is a genuine dispute as to "which party breached first."   (Docket 51 at pp. 4-5).   In overruling defendants' second factual objection, the court found Stanley Price instructed plaintiffs' auctioneer to cancel the auction because Samson had been sold.   See supra Section III.A.2.   The record supports the R&R's conclusion that Samson breached the contract first by selling itself outside plaintiffs' control.   Summary judgment is appropriate.

Setting the timing of the sale versus the cancellation of the auction aside, the record also clearly indicates Samson breached the contract by negotiating for its sale without plaintiffs' knowledge or input.[7]   Defendant Price admits as much.   (Docket 38 at ¶ 8) (Defendant "Price did not inform [plaintiffs] of the negotiations nor refer the buyer to [plaintiffs].").   The contract granted plaintiffs an "exclusive right to advertise, market and sell" Samson for a 120-day exclusivity period following the contract date.[8]   (Docket 34-1 at p. 1).   The contract barred Samson from selling itself or its assets during the exclusivity period.   Id. at pp. 1-2.   Samson agreed that "[a]ll communications and inquiries regarding [Samson] shall be directed to" plaintiffs.   Id. at p. 2.   In their summary judgment briefing, defendants argued negotiating with OnCourse, if a breach at all, could not constitute a material breach.   (Docket 40 at pp. 5-6).

_____

[7]The R&R did not address whether summary judgment was appropriate on this basis.   Nevertheless, the court has authority to modify an R&R to grant summary judgment on bases not considered by the magistrate judge.   Fed. R. Civ. P. 72(b)(3).

[8]The exclusivity period ran from August 8, 2017, until December 6.

"Under South Dakota law, a material breach is one that 'would defeat the very object of the contract.'" Miller v. Mills Const., Inc., 352 F.3d 1166, 1172 (8th Cir. 2003) (quoting Icehouse, Inc. v. Geissler, 636 N.W.2d 459, 465 (S.D. 2001)). Materiality is generally a question of fact for the jury.

In this case, however, there is no genuine factual dispute as to breach or materiality of that breach to submit to a jury. Defendants admitted negotiating to sell Samson during the exclusivity period. See supra Section III.A.1. The object of the contract was to "sell, lease or otherwise dispose of" Samson or its assets. (Docket 34-1 at p. 1). The contract achieved that objective by reserving to plaintiffs the "exclusive right to advertise, market and sell" Samson through an "advertising and marketing program[,]" the development of which was "the sole responsibility of" plaintiffs. Id. at pp. 1-2. The contract also assigned plaintiffs the responsibility to "negotiate with *all* prospects" and to "solicit offers for the purchase" of Samson, with accompanying directives for negotiation. Id. at pp. 2-3 (emphasis added).

Samson's decision to circumvent the contractual process and negotiate its sale without plaintiffs' involvement clearly breached the contract and defeated its object. Plaintiffs were retained to negotiate and sell Samson. The contract expressly forbade defendants from independently negotiating a sale. In defiance of the contract, Samson independently negotiated and sold itself, cutting plaintiffs out. Under these circumstances, the court finds the evidence

12

as to the materiality of Samson's breach is "so one-sided" that plaintiffs are entitled to summary judgment.   Anderson, 477 U.S. at 252.

**B.    Legal objections**

Having determined plaintiffs are entitled to summary judgment on their breach of contract claim, the court turns to damages.[9]   The magistrate judge recommended granting plaintiffs $123,853.03 in damages on their breach of contract claim.   (Docket 50 at pp. 19-29).   Defendants' legal objections attack the magistrate judge's damages analysis.   The court overrules defendants' first and second legal objections, but sustains their third objection.

A review of the contract illustrates defendants' objections.   The contract established two phases.   In Phase I, lasting for 60 days between August 8, 2017 and October 7, plaintiffs were to attempt to sell Samson as a going concern, referred to as an "entirety sale."   (Docket 34-1 at p. 1).   If Phase I ended without an entirety sale, plaintiffs were to arrange an auction for Samson's assets within 45 to 60 days of the end of Phase I.   Id.   Defendants agreed to pay plaintiffs their "Entirety Sale phase" expenses, not to exceed $20,000, and their "Auction Phase" expenses, with no cap.   Id. at p. 3.   Defendants also agreed to pay a

_____

[9]The magistrate judge recommended summary judgment not be granted against Black Earth on plaintiffs' breach of contract and unjust enrichment claims.   (Docket 50 at p. 14).   Plaintiffs do not object to this recommendation and the court accepts it.

$100,000 commission for assets sold during an entirety sale.[10]   Id.   If assets were sold at an auction, purchasers would be responsible for paying plaintiffs' fee.   Id.

### 1.   First objection

Defendants first object to the magistrate judge's conclusion that the sale of Samson to OnCourse was an "entirety sale" for the purposes of determining plaintiffs' fee.   (Docket 51 at p. 5).   They assert the sale did not include the real property, owned by Black Earth, upon which Samson's facility was located.   Id. In response, plaintiffs argue the "disposition of Black Earth's real estate is immaterial" to the court's finding that defendants breached the contract. (Docket 52 at pp. 4-5).   The court overrules the objection.

The contract defines an entirety sale as the sale "of all or a substantial portion or portions of the Assets in bulk[.]"   (Docket 34-1 at p. 1).   "Assets" are defined in the contract's exhibit A as:

> All machinery, equipment, tooling, accessories, facility assets and related tangible personal property, inventory, raw materials, work in process, intellectual property, accounts receivable and all other assets [and] [t]hat certain parcel or parcels of real property and improvements constituting [defendants'] premises commonly known as 1151 Industry Rd, Sturgis, South Dakota 57785.

Id. at p. 8.   Samson sold all its "assets . . . including machinery, equipment, inventory and Intellectual Property" to OnCourse.   (Docket 34-12 at p. 1).

---

[10]Plaintiffs were entitled to the greater of $100,000 or a percentage of the sale price.   (Docket 34-1 at p. 3).   Given the $1 million sale price, plaintiffs' commission works out to $100,000.   See infra Section III.C.

Samson retained its accounts receivable and cash.  Id.  Black Earth, not a party to the OnCourse sale contract, retained its real estate.  Id.

The magistrate judge determined the Samson sale was an entirety sale because it involved "substantially all" of Samson's assets sold "in bulk," as required by the contract.  (Docket 50 at pp. 22-23).  Upon de novo review, the court agrees.  In South Dakota, "[w]hen the language of a contract is plain and unambiguous, it is [the court's] duty to interpret it and enforce it as written." Edgar v. Mills, 892 N.W.2d 223, 231 (S.D. 2017) (internal citation omitted).  The contract's unambiguous language does not require that a sale consist of all assets to qualify as an entirety sale.  Samson sold virtually all of its assets, excluding only its accounts receivable and cash on hand, to OnCourse.  By any reasonable reading of the contract, the Samson sale is an entirety sale.

Defendants' argument conflates Samson and Black Earth, two separate entities that independently agreed to the contract with plaintiffs.  Samson engaged in an unauthorized entirety sale of its assets to OnCourse, regardless of whether Black Earth retained its real estate asset.  The magistrate judge did not err in finding Samson's sale was an entirety sale, as defined by the contract. Defendants' first legal objection is overruled.

### 2.    Second objection

Defendants' second legal objection contests the magistrate judge's finding that plaintiffs were entitled to an entirety sale commission if the sale was concluded "at any time within the . . . exclusive period[.]"  (Docket 51 at p. 6).

In their view, an entirety sale commission was only available if the sale took place in the 60 days of Phase I.   Id. at pp. 7-8.   The court overrules the objection.

Defendants conflate the contract's phase and fee structures.   The contract divides the exclusivity period into Phase I, during which plaintiffs agreed to seek out an entirety buyer, and Phase II, during which plaintiffs were to conduct an asset auction.   (Docket 34-1 at p. 1).   The contract's expenses provision tracks the phase structure, referring to expenses incurred during the "Entirety Sale phase" and the "Auction Phase," indicating that the parties knew how to link payment to the phase structure when desired.[11]   Id. at p. 3.   But the fee provision conspicuously refers only to methods of sale, not to phases. Id.   Defendants must pay an entirety sale commission "[w]ith respect to *all* sales or lease of Assets consummated during or as a result of the Entirety Sale[.]"   Id. (emphasis added).   The fee provision does not refer to the phases established for division of plaintiffs' work.   Instead, by use of the word "all," the provision requires defendants to pay the commission for any transaction taking place through an entirety sale within the exclusivity period.

In their summary judgment briefing, defendants argued any ambiguity in the fee provision should be construed in their favor, since plaintiffs drafted the contract.   (Docket 40 at pp. 6-7).   No party informed the court who drafted the contract.   Even taking defendants' assertion as true, "[a]mbiguity requires more

---

[11]The contract's services and offering procedure provisions also refer to the phase structure, strengthening the court's conclusion that the absence of the phase structure in the fee provision was intentional and meaningful.   (Docket 34-1 at pp. 2-3).

than mere disagreement: . . . . [A] contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Coffey v. Coffey, 888 N.W.2d 805, 809 (S.D. 2016) (internal quotation omitted). The fee provision is not ambiguous. It makes clear that defendants must pay a commission for "all sales . . . consummated during or as a result of the Entirety Sale." (Docket 34-1 at p. 3). The fee provision does not limit the commission to entirety sales taking place during Phase I. The court need not resort to any South Dakota canons of contract interpretation.

Defendants' second legal objection is overruled. Plaintiffs are entitled to an entirety sale commission, as defined by the contract, as damages.

### 3. Third objection

Defendants' final legal objection argues the magistrate judge erred when she held, in the alternative, that the parties mutually modified the contract to permit plaintiffs to conduct an entirety sale during Phase II. (Docket 51 at pp. 6-7) (citing Docket 50 at pp. 25-28). They assert the record does not show evidence of their consent to modify the contract. Id. at p. 7. Although its ruling has little effect, the court sustains the objection.

"[C]ontractual rights and remedies may be modified or waived by . . . conduct" subsequent to the execution of the original contract. Hofeldt v. Mehling, 658 N.W.2d 783, 787 (S.D. 2003) (citing Moe v. John Deere Co., 516 N.W.2d 332, 335 (S.D. 1994)). "[S]ubstitution or modification of a contract

17

cannot be effected by the sole action of one of the parties to it.   The consent of both is required to alter or supplant a contract fairly made." Ahlers Bldg. Supply, Inc. v. Larsen, 535 N.W.2d 431, 435 (S.D. 1995) (citations omitted). Whether "the oral statements and conduct of the parties modif[ied] the written agreement" is "a question of fact." Moe, 516 N.W.2d at 336.

The R&R pointed to record evidence showing plaintiffs explained in weekly reports that scheduling an auction could motivate potential entirety sale buyers. (Docket 50 at pp. 25-27).   In an e-mail response to plaintiffs' sixth weekly report, defendant Price agreed to "set[] up an auction timeline" but also stated "[a] sale is preferred[.]"   (Docket 34-9 at p. 3).   The R&R does not discuss any other action by a defendant which could be construed as consenting to a contract modification.

The record is not nearly one-sided enough for the court to find as a factual matter that the parties modified the contract to allow for a Phase II entirety sale. While defendant Price certainly consented to an auction, the contract expressly envisioned that an auction would take place during Phase II if necessary.   The court cannot say defendant Price's preference for an entirety sale—expressed in a single e-mail that contains no reference to the contract—constitutes consent to modification.   A fact finder would be entitled to make that inferential leap, but the court cannot do so in summary judgment proceedings.

In any event, the court already found plaintiffs are entitled to an entirety sale commission.   See supra Section III.B.2.   It does not matter that the sale

took place during Phase II.   Whether the parties modified the contract has no

bearing on plaintiffs' damages.   Defendants' third legal objection is sustained.

### C.    Plaintiffs' damages

Defendants did not object to the magistrate judge's findings that plaintiffs

were entitled to $23,853.03 in expenses under the contract.   (Docket 50 at

p. 19).   The court adopts the R&R on this point.   As noted above, plaintiffs are

also entitled to an entirety sale commission.   See supra Section III.B.2.   With a

$1 million sale price, the commission works out to $100,000.[12]   In total,

plaintiffs are entitled to $123,853.03 in damages on their breach of contract

claim against Samson.

Plaintiffs also request pre- and post-judgment interest.   (Docket 35 at

p. 8).   A federal statute authorizes the court to award post-judgment interest.

28 U.S.C. § 1961(a).   Interest shall begin to accumulate when the court enters

judgment after resolving the remaining claims.   See infra Section III.D.

In South Dakota, an entity "entitled to recover damages . . . is entitled to

recover interest thereon from the day that the loss or damage occurred, except

during such time as the debtor is prevented by law, or by act of the creditor, from

paying the debt."   SDCL § 21-1-13.1.   "Prejudgment interest is mandatory[.]"

Casper Lodging, LLC v. Akers, 871 N.W.2d 477, 499 (S.D. 2015), abrogated on

---

[12]The contract entitles plaintiffs to the greater of $100,000 or a percentage of "aggregate gross sale proceeds."   (Docket 34-1 at p. 3).   Samson was sold for $1 million.   (Docket 34-12 at p. 1).   $100,000 is greater than the percentage based fee allowable under the contract.   Even if Samson's sale price was later lowered to a total of $940,000, plaintiffs would still be entitled to $100,000.

other grounds by Magner v. Brinkman, 883 N.W.2d 74, 79 (S.D. 2016). The date of breach is not necessarily the day that the loss or damage occurred for purposes of SDCL § 21-1-13.1. Id. at 500; see also Orion Fin. Corp. of S.D. v. Am. Foods Grp., Inc., 281 F.3d 733, 744 (8th Cir. 2002) (awarding, under South Dakota law, prejudgment interest on breach of contract claim accruing from date of payment demand).

Plaintiffs did not demonstrate that their loss or damage occurred on the date of breach.[13] Without a date to serve as a calculation starting point, the court cannot award prejudgment interest. Plaintiffs may separately move for prejudgment interest with appropriate factual and legal support.

### D. Remaining claims

The magistrate judge recommended denying plaintiffs' motion for summary judgment on their breach of contract claim against Black Earth and on their unjust enrichment claims against Samson and Black Earth. (Docket 50 at pp. 14, 19). She also recommended granting summary judgment to defendant Price on plaintiffs' tortious interference with contract claim. Id. at pp. 30-34. The parties did not object to these recommendations and the court adopts them in full.

Accordingly, plaintiffs' unjust enrichment claims against Samson and Black Earth, as well as their breach of contract claim against Black Earth,

---

[13]The record does not disclose the date when Samson breached by first entering into sale negotiations with OnCourse. The sale took place on November 7, 2017, which may also serve as a breach date. (Docket 34-12 at p. 17).

survive summary judgment.   Given the multiple remaining claims, the court will not enter final judgment on the resolved claims under Federal Rule of Civil Procedure 54(b) at this time.[14]

## ORDER

For the reasons given above, it is

ORDERED that defendants' objections to the report and recommendation (Docket 51) are sustained in part and overruled in part.

IT IS FURTHER ORDERED that the report and recommendation (Docket 50) is adopted as modified by this order.

IT IS FURTHER ORDERED that defendant Kenneth Price's motion for summary judgment (Docket 36) is granted.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment (Docket 33) is granted in part and denied in part.

Dated March 10, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

---

[14]The R&R cogently explains that the remaining claims are likely legally insufficient, at least on the present factual record.   (Docket 50 at pp. 14, 19).   If the parties do not promptly dispose of the remaining claims in some fashion, the court may give notice under Federal Rule of Civil Procedure 56(f) of its intent to *sua sponte* grant summary judgment.